UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Larry Gehl,                                                           Civil No. 23-2244 (DWF/JFD)

          Plaintiff,

v.                                                                                MEMORANDUM
                                                                          OPINION AND ORDER
James P. Gleason,

          Defendant.

## INTRODUCTION

This matter is before the Court on Defendant James Gleason's motion to dismiss for *forum non conveniens* or, in the alternative, to stay the proceedings. (Doc. No. 18.) Plaintiff Larry Gehl opposes the motion. (Doc. No. 27.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

### A.     Current Action

Gehl loaned $2,120,200.00 to a company called Xtraction (the "Loan"). (Doc. No. 1 ("Compl.") ¶ 7.) Xtraction then executed a Promissory Note evidencing the Loan. (*Id.*) The Note was "secured by the personal guarantees and pledge agreements of Robert M. Gurnee and James P. Gleason." (*Id.* ¶ 8.) Gleason executed a Personal Guarantee ("Guarantee") in January 2021, guaranteeing the timely and complete payment by Xtraction on the Loan. (*Id.* ¶ 9.) Gleason's liability under the Guarantee is 17.5% "of the outstanding balance of the principal under the Note at the time [Gehl] seeks to

enforce the guarantee." (*Id.* ¶ 10.) Gleason also executed a Pledge Agreement, pledging his 17.5% ownership interest in Xtraction as security. (*Id.* ¶¶ 11-12.)

Gehl now alleges that Xtraction has failed to make all required monthly payments. (*Id.* ¶ 15.) The Note is in default, and Gehl alleges that Gleason is personally liable for the default. (*Id.* ¶¶ 16-19.) Gehl alleges that Gleason owes $449,950.15, which is 17.5% of the principal plus interest. (*Id.* ¶ 21.)

### B.     California Action

In a separate California action, Gleason has sued Xtraction, Gehl, and 27 other defendants. (Doc. No. 22-1 ("CA Compl.").) Gleason brings several claims related to his work for Xtraction.

Gleason and Robert Gurnee started Xtraction together. (*Id.* ¶¶ 1-3.) Xtraction is a mattress recycling company. (*Id.*) Gleason alleges that he and Gurnee "agreed to co-own this business, to share in its profits, and to create new sites across the United States as more and more states implemented mattress recycling requirements." (*Id.* ¶ 2.) Gleason and Gurnee brought Gehl in as an investor in the company. (*Id.* ¶ 25.) Xtraction issued a total of 10,000 shares, and Gleason held 1,950 of them. (*Id.*)

Gleason, Gurnee, and Gehl were the three initial members of Xtraction's Board of Directors. (*Id.* ¶ 27.) Gleason entered into an Employment and Stock Repurchase Agreement where he agreed to work as Xtraction's Chief Operating Officer. (*Id.* ¶¶ 28-29.) Gleason was paid a base salary and was also entitled to receive "Other Compensation," in the event that Xtraction opened a new site, which consisted of "30% of net operating income for any month in which Xtraction generated net operating

income of at least $25,000." (*Id.* ¶ 30.)  Gleason alleges that Gehl and Gurnee represented to him, through the Employment Agreement, that "if [Gleason] poured his time and efforts into expanding Xtraction, he would receive increased compensation." (*Id.* ¶ 31.)  Gleason alleges that at the time Gehl and Gurnee made these representations they had already made plans to "eliminate Mr. Gleason's interests and to establish a competing business to Xtraction without Mr. Gleason's involvement." (*Id.* ¶ 32.) Gleason also personally loaned Xtraction $31,000, which has not been paid back. (*Id.* ¶¶ 34, 115-20.)

In 2020, Gurnee led negotiations to purchase another mattress recycling company, Rest in Peace Recycling, that operated in central California. (*Id.* ¶ 39.)  Gehl provided financing for the purchase. (*Id.* ¶ 40.)  As a condition of the funding, Gehl required Gleason to sign a Second Amended and Restated Bylaws. (*Id.*)  The new bylaws provided, in part, that if a shareholder ceased being a director, then Xtraction was required to purchase the shareholder's shares. (*Id.*)  The new bylaws also expanded the Board of Directors from three to four. (*Id.* ¶¶ 41-42.)  Gleason alleges that "[o]nce again," Gurnee and Gehl represented to Gleason that "he would be rewarded for his time and efforts in expanding Xtraction and increasing its profits." (*Id.* ¶ 43.)

Gurnee and Gleason made efforts to expand Xtraction to other states. (*Id.* ¶ 38.) Gleason alleges that he and Gurnee "regularly discussed strategy for an East Coast expansion." (*Id.* ¶ 77.)  Gehl and Gurnee discussed with Gleason "potentially forming a new limited liability company for Xtraction's expansion to the East Coast." (*Id.* ¶ 82.)  In August 2020, Gurnee indicated that he would be dedicating most of his time to

3

"expansion and growth." (*Id.* ¶ 86.) Gleason alleges that Gurnee and Gehl feigned interest in expanding Xtraction "to take advantage of Mr. Gleason's extensive business and engineering experience" and in furtherance of their "secret plans to start a competing business to Xtraction." (*Id.* ¶¶ 89-90.)

In July 2021, Gleason's employment was terminated. (*Id.* ¶ 47.) Following his termination, Gleason discovered that Gurnee and Gehl started a new mattress recycling company. (*Id.* ¶ 54.) The new company, Gehl, Gurnee, & Young ("GGY"), was registered with the Minnesota Secretary of State in August 2021. (*Id.* ¶ 55.) GGY currently does business in Rhode Island and Connecticut. (*Id.*) Gleason alleges that Gurnee and Gehl "used Xtraction's property, contacts, business model, and goodwill to create a competing business for themselves that was solely created to cut out Mr. Gleason." (*Id.* ¶ 57.) Gleason also has not been compensated for his shares in Xtraction. (*Id.* ¶ 51.)

Gleason asserts numerous claims against the defendants, including breach of partnership agreement, breach of fiduciary duty, fraud, intentional interference with contractual relations, intentional interference with prospective economic advantage, breach of contract, restitution, violation of Labor Code § 2802, and violation of California Business Professions Code §17200.[1]

---

[1] In November 2023, the California court granted Gleason leave to amend his § 17200 claim, but Gleason indicated that he intends to dismiss the claim. (Doc. No. 20 at 7.)

### C. Procedural Posture

Gleason moves to dismiss this case, involving the Loan, for *forum non conveniens*, or, in the alternative, to stay the proceedings. Gleason asserts that this case significantly overlaps with the California action. Gehl acknowledges in his Complaint that Gleason's ownership interest in Xtraction "is currently being litigated in California" (Compl. ¶ 41), but he asserts that this action is distinct from the California action. Moreover, Gehl asserts that Gleason is bound by a forum-selection clause.

## DISCUSSION

Gleason moves to dismiss this case based on the doctrine of *forum non conveniens*. "'The principle of *forum non conveniens* permits a court to decline jurisdiction even though venue and jurisdiction are proper' because the action should instead be tried in another judicial forum." *United Fire & Cas. Co. v. Weber, Inc.*, 434 F. Supp. 3d 729, 733 (D. Minn. 2020) (quoting *Mizokami Bros. of Ariz. v. Mobay Chem. Corp.*, 660 F.2d 712, 717 (8th Cir. 1981)).

The Court considers a number of factors under the doctrine of *forum non conveniens*, including private and public interest factors. Private-interest factors "include relative ease of access to sources of proof, the cost of obtaining attendance of willing witnesses, and other practical issues that can make litigation of a case more feasible." *Id.* Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6

5

(2013)). The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994).

A valid forum-selection clause, however, changes the *forum non conveniens* analysis. "A valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Enerplus Res. (USA) Corp. v. Wilkinson*, 865 F.3d 1094, 1097 n.5 (8th Cir. 2017) (internal quotations and citation omitted). A forum-selection clause "may be set aside if it is unjust, unreasonable, or invalid due to fraud or overreaching." *Wells Fargo Fin. Leasing, Inc. v. Orlando Magic, Ltd.*, 431 F. Supp. 2d 955, 961 (S.D. Iowa 2006). When there is a valid forum-selection clause, "the court must disregard consideration of private factors" when applying the *forum non conveniens* doctrine. *United Fire & Cas. Co.*, 434 F. Supp. 3d at 733.

### I.   Forum-Selection Clause

All the loan documents—the Promissory Note, Guarantee, and Pledge—contain forum-selection clauses. Gleason breezes over the forum-selection clauses in his initial briefing. And for the first time in his reply brief, Gleason alleges that the forum-selection clauses are invalid because they are the product of fraud. "The party resisting enforcement of a valid forum selection clause bears a heavy burden in convincing the Court that it should not be held to its bargain." *Zamora Ent., Inc. v. William Morris Endeavor Ents., L.L.C.*, 667 F. Supp. 2d 1032, 1039 (S.D. Iowa 2009). Forum-selection clauses are prima facie valid and will be given effect unless the party opposing the clause

makes a "strong showing that it should be set aside." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991) (internal quotations and citation omitted).

"[A] forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion." *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (internal quotations and citation omitted) (emphasis in original).  In the California action, Gleason alleges that over twenty defendants, including Gehl, fraudulently induced him to invest time and effort into Xtraction and undercut Xtraction's business endeavors by secretly forming a new company in direct competition with Xtraction.  (CA Compl. ¶¶ 89-93.)

Gleason asserts that the loan documents, including the Guaranty and Pledge, were executed, in part, based on Gehl and the other defendants' false assertions that they planned to "develop Xtraction, including expanding operations outside California." (Doc. No. 29 at 4.)  The complaint in the California action, however, does not explain the purpose of the Loan or the facts surrounding Gleason's decision to sign the Guaranty and Pledge.  In fact, the complaint does not mention the Guaranty or Pledge at all.  The complaint does allude to certain funding provided by Gehl to finance the purchase of a separate California mattress recycling and disposal company in late 2020—around the same time the Loan was executed.  (*See* CA Compl. ¶¶ 39-40.)  If this is the same loan at issue here, then these facts seem to contradict Gleason's assertion that the defendants' stated intention to expand Xtraction was false, as it appears that the purchase of the other California mattress recycling company was successful.  (CA Compl. ¶ 45.)

Nonetheless, it is not clear to the Court whether the financing by Gehl referenced in the California complaint is related to the Loan at issue in this case.[2] Other than a conclusory assertion that this Loan was "necessarily" the "product of fraud" (Doc. No. 29 at 4), Gleason offers no specifics about the Loan, how Gleason was induced by fraud to sign the Guaranty and Pledge, or how the fraud specifically relates to the forum-selection clauses. *See Marano*, 254 F.3d at 757 (noting that the complaint "d[id] not even remotely suggest that the [forum-selection] clauses were inserted into the agreements as the result of fraud"). Gleason's general assertion that he "was induced by fraud" to sign the Guaranty and Pledge "is insufficient to raise an issue that the forum-selection clauses within those agreements may be unenforceable because of fraud." *Id.*; *see also Elliott v. Manhattan Cryobank, Inc.*, No. 19-cv-190, 2019 WL 1318565, at *2 (E.D. Mo. Mar. 22, 2019) ("[G]eneral allegations of fraud in the inducement are insufficient to raise an issue that the forum-selection clause may be unenforceable because of fraud.").

A forum-selection clause may also be set aside if enforcement of the clause would mean that a party would "for all practical purposes be deprived of his day in court." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972). Here, neither party argues that they would be deprived of their day in court if required to litigate this action here. The Court therefore concludes that the forum-selection clause is valid.

---

[2] Gehl acknowledged at the hearing that the Loan was indeed executed to purchase the California mattress company referenced in the California complaint; however, neither party mentioned this in the pleadings, briefings, or declarations.

**II.     Public-Interest Factors**

Because the forum-selection clause is valid, the Court must "disregard consideration of private factors" when applying the *forum non conveniens* doctrine. *United Fire & Cas. Co.*, 434 F. Supp. 3d at 733; *see also Atl. Marine Const. Co.*, 571 U.S. at 64 (holding that a court must "deem the private-interest factors to weigh entirely in favor of the preselected forum" when there is a valid forum-selection clause). Public-interest factors will rarely overcome a forum-selection clause, and the forum-selection clause should be enforced in all but "unusual cases." *Atl. Marine Const. Co.*, 571 U.S. at 64.

Gleason argues that the public-interest factors support dismissal because "all of the facts relevant to this proceeding . . . are all the subject matter of the California Action." (Doc. No. 29 at 5.) As the Court noted above, facts surrounding the Loan specifically are not being litigated in the California action, and the California complaint does not even mention the Pledge or Guaranty. Gleason further argues that he lives in California and the facts underlying Gehl's claims arose in California. But this showing is not enough to demonstrate that the public interest factors overwhelmingly support dismissal. Moreover, as Gehl asserts, Minnesota law will govern this action, and this Court is in a better position to apply Minnesota law. Overall, Gleason has not met his heavy burden of demonstrating that this is an unusual case that warrants dismissal despite a valid forum-selection clause.

**III.     Stay**

Lastly, Gleason argues that the Court should stay this action pending resolution of the California action. The *Colorado River* abstention doctrine "permits federal courts to decline to exercise jurisdiction over cases where 'parallel' state court litigation is pending, meaning that there is 'a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.'" *Spectra Commc'ns Grp., L.L.C. v. City of Cameron*, 806 F.3d 1113, 1121 (8th Cir. 2015) (quoting *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013)). The Court is doubtful that the California action will dispose of any of the issues in this case, as the California action does not involve litigation related to liability under the Loan.[3] *Colorado River* abstention is only applicable "where the surrender of federal jurisdiction is supported by the clearest of justification." *Id.* (internal quotations and citation omitted). Gleason has not provided a sufficient basis to support a stay under *Colorado River*. To the extent necessary, however, the Court will work with the California state court to coordinate discovery and otherwise streamline the proceedings, if possible.

## CONCLUSION

For the reasons outlined above, the Court denies Gleason's motion to dismiss.

---

[3]     The California action does involve litigation regarding Gleason's ownership of his shares of Xtraction. These are the same shares that Gleason pledged in the Pledge Agreement. But Gleason's liability under the Loan and Gehl's right to Gleason's shares, should Gleason be deemed the owner, are separate issues and will not be addressed in the California action.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant James Gleason's motion to dismiss for *forum non conveniens*, or, in the alternative, to stay proceedings (Doc. No. [18]) is respectfully **DENIED.**

Dated:  April 9, 2024                             s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge