# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Larry Gehl,<br><br>    Plaintiff,<br><br>v.<br><br>James P. Gleason,<br><br>    Defendant. | Case No. 23-cv-02244-DWF-JFD<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In opposition to Gehl's motion for summary judgment, Gleason fails to identify any disputed material facts regarding the key issues in this case. There is no good faith dispute that Gleason entered into the Personal Guaranty and the Pledge and that he has failed to make any payment to Gehl. The arguments Gleason does make to support his breach of the Personal Guaranty all fail because they relate to events that either post-date his agreement to the terms or require impermissive speculation. In the end, no facts or arguments identified by Gleason excuse his breach of contract. For the reasons stated in Gehl's principal summary judgment memorandum, and the reasons set forth in this memorandum, Gehl is entitled to judgment as a matter of law.

## ARGUMENT

### I. Gleason Has Not Identified Any Disputed Material Facts

Gleason provides approximately ten pages "factual background." However, these facts do not relate to the issues presented in this case: Gehl's performance under the Note,

Gleason's promise in the Personal Guaranty to repay the Note, Xtraction's breach of the Note, and Gleason's breach of the Personal Guaranty. Gehl stands by his Statement of Undisputed Material Facts that were provided in his principal summary judgment memorandum and urges the Court to the same.

With no identified disputed material facts,[1] this matter remains appropriate for summary judgment. *See* Fed. R. Civ. P. 56(a).

## II.  The Note Has Been Authenticated.

Gleason contends that the Note between Xtraction and Gehl—as well as various other documents—has not been properly authenticated. (Doc. 46 at p. 14.) Federal Rule of Evidence 901 governs authentication or the identification of evidence and provides that a witness may testify "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). "To authenticate a document, the proponent need only prove a rational basis for the claim that the document is what the proponent asserts it to be." *United States v. Long*, 857 F.2d 436, 442 (8th Cir. 1988) (citations omitted). The authentication requirement of Fed. R. Evid. 901 is satisfied when a party or their counsel concede the genuineness of a document. *See Resolution Tr. Corp. v. Eason*, 17 F.3d 1126, 1131 (8th Cir. 1994) ("First, RTC's

---

[1] Gehl recognizes that Gleason has raised a number of arguments regarding alleged activities in the Spring and Summer of 2021, months after he agreed to be bound by the Guaranty and the Pledge. These post-agreement allegations may require further development in the California Action, but none are germane to the pending motion and this action that relates to the Note, Guaranty and Pledge all of which were agreed to in late 2020 and early 2021.

authentication objection lacks merit. Counsel for RTC conceded the genuineness of these two exhibits, satisfying the authentication requirement of Fed. R. Evid. 901.").

Gleason has conceded that Note exists in numerous ways. The note is expressly identified in both the Guaranty and the Pledge. By signing both of those documents he admits to the existence of the Note, which was created to fund the RIP purchase. (*See e.g.,* Doc. 44-1 at pp. 77–87.) In addition, in the California Action (complaint paragraph 45) Gleason admits that Xtraction closed on the RIP purchase in late 2020, and it could have only done this with the funds provided by Gehl pursuant to the Note. Finally, Gleason was in charge of financial records of Xtraction and the Note was recorded in those records through the first half of 2021 when Gleason was actively involved in Xtraction. (Doc. 44-1, Ex. 2 at 42:1–20 and 71:3–12.)

To the extent that there remains any doubt regarding the authenticity of the documents at issue in this matter, Gehl further attests to their authenticity. (Second Declaration of Larry Gehl ("Second Gehl. Decl.") at ¶¶ 2–8.)

## III. The Note was Supported by Consideration.

Gleason asserts that there is no evidence that the Note was supported by consideration because Xtraction itself did not receive money directly from Gehl. (Doc. 46 at p. 15.) Critically, consideration need not pass from the promisee to the promisor in order to be valid. *C & D Invs. v. Beaudoin*, 364 N.W.2d 850, 853 (Minn. Ct. App. 1985). Consideration can be directed to a party other than the other party to the agreement.

We see examples of this in everyday life. When a seller sells their home, the seller typically receives the sale funds from a financial institution—not directly from the buyer.

The fact that the seller did not receive the funds directly from the buyer does not invalidate the sale contract or demonstrate a lack of consideration.

It is undisputed that Gehl paid RIP a total of $2,127,975. (Doc. 42 at ¶ 11; Doc 43 at ¶ 10.) This payment to a third-party is adequate consideration for the Note.

**IV.**    **Xtraction is in Breach of the Note.**

Gleason argues that it is impossible for Xtraction to be in breach of the Note because "Gehl was obligated under the Note to deliver to Xtraction a written Notice to Begin Payment" and he was obligated to send a Notice of Acceleration, and Gleason (incorrectly) contends that those notices were not sent.[2] (Doc. 46 at p. 16.) Presumably, Gleason is arguing that Gehl has failed to satisfy required prerequisites under the Note, thus making it impossible for Xtraction to breach the Note.

Gehl did send a Notice to Begin Payment to Xtraction. (Doc. No. 44-1 at p. 109.) Gehl also sent an Acceleration Notice. (*Id.* at 111.) Moreover, Gleason expressly waived any defenses to his failure to pay, including the defense that notices were never sent:

> Guarantor's liability for payment of the Note shall be absolute and unconditional, and nothing except final and full payment to the Lender of the Note shall operate to discharge Guarantor's liability under this Guaranty. Accordingly, Guarantor unconditionally and irrevocably waives each and every defense under the principles of guaranty or suretyship law would otherwise operate to impair or diminish the liability of Guarantor for this Note, including but not limited to diligence, promptness, presentment, demand, protest, notice of acceleration, notice of intent to accelerate , notice of default, notice of dishonor, notice of protest, notice of execution, notice of extension, notice of renewal, amendment or modification of the Note or security Agreement, notice of acceptance of this Guaranty, and notice of the creation of this Note. Guarantor agrees to pay any and all expenses and costs

---

[2] *See* Section V, *infra*.

of collections (including attorney fees) incurred by Lender in enforcing any rights under this Guaranty.

(Doc. 44-1 at p. 78.)

Gleason's argument that Xtraction cannot be in breach of the Note is unfounded. Because Xtraction failed to repay the funds to Gehl, Xtraction breached the Note.

**V.      Notices Were Not Required to be Sent to Gleason.**

Gleason states that Gehl was required to provide Notice of Payment and Notice of Acceleration directly to Gleason in order to enforce the terms of the Note. (Doc. 46 at pp. 17–18.) Gleason also states that Gehl conceded he was required to provide Gleason with notices. (*Id.* at p. 17.) Due to a drafting error, the Complaint in this matter states, "On July 19, 2023, Plaintiff delivered a Notice of Default to Defendant as required under the Loan Documents" and "On July 19, 2023, Plaintiff delivered a Notice of Acceleration to Defendant as required under the Loan Documents." (Doc. No. 1 at ¶¶ 16–17.) These should have said "Xtraction" instead of "Defendant." Nevertheless, the Note speaks for itself and clearly states notices are to be sent to Xtraction, not Gleason.

The Note states:

> **Terms of Repayment.** This Note shall have a term of five (5) years (the "Term"). Payments shall be made in monthly installments to Lender of principal and interest amortized over five years into 60 equal payments of principle and interest. Monthly installment payments shall be due on the first of each month, but shall not begin until Lener provides written notice to Borrower at least ten days prior to the date that monthly payments begin.

(Doc. 44-1 at p. 74.)

In regard to acceleration, it states:

> **Acceleration.** Any time Borrower is in Default, the entire principal amount outstanding hereunder and costs of collection shall at once become due and payable at the option of Lender upon ten day's written notice to Borrower. Lender may exercise this option to accelerate during the continuation of any Default by Borrower regardless of any prior forbearance.

(*Id.* at p. 75.)

It is evident from the unambiguous terms that these Notices must be sent from the lender to the borrower. The Note defines "Lender" as Larry Gehl. (*Id.* at p. 74) The Note defines "Borrower" as Xtraction. (*Id.*) Thus, Gehl was not obligated to send any Notice directly to Gleason. Gleason's argument that the Loan is unenforceable because he did not receive the allegedly required notices fails.

## VI. The Guaranty Need Not Have Additional Consideration

Gleason incorrectly asserts that because the Personal Guaranty was not supported by consideration, the Personal Guaranty is unenforceable. (Doc. 46 at p. 18.) Gleason ignores the caselaw that establishes that additional consideration is not required for a guaranty.

As stated in Gehl's principal summary judgment brief, Minnesota recognizes guaranties as unilateral contracts. *See U.S. Bank Nat. Ass'n v. Polyphase Elec. Co.*, 2012 WL 1394397 (D. Minn. Apr. 23, 2012).

> The act of extending the credit, standing alone, without notice to the guarantor, is sufficient acceptance of his undertaking. That is so because the offer does not require such notice or anything other than or additional to the act of the creditor in extending credit to the principal debtor as a binding acceptance.

*Id.* (*citing Midland Nat'l Bank of Minneapolis v. Sec. Elevator Co.*, 200 N.W. 851, 853–55 (Minn. 1924)).

Gleason further contends that his "decision to sign the Guaranty was solely contingent on his ongoing involvement with Xtraction." (Doc. 46 at p. 19.) However, the documents do not say that. Nothing in the Personal Guaranty states that it was contingent on Gleason's continued employment. (*See generally,* Doc. 44-1 at pp. 78–80.) In fact, Gleason's employment agreement expressly states a specific defined employment term of October 2018 – September 2021. (Doc. No. 47-3 p. 2.) It further states that the employment agreement cannot be amended unless there is a signed writing amending the terms. (*Id.* at p. 7.) Finally, there is nothing in the Note, Guaranty, Pledge Agreement or Employment Agreement that makes Gleason's duties under the Guaranty contingent on his continued employment. Gleason's naked allegation in that regard should be rejected, especially in light the fact that he had a written employment contract that prohibited amendment without a signed writing. (*See generally, id.*)

For the reasons stated above, Gleason's argument that the Personal Guaranty is unenforceable because the contract lacked consideration is false.

## VII. The Loan was Not Illusory.

In another effort to avoid his obligations under the Personal Guaranty, Gleason argues that the entire Loan transaction between Gehl and Xtraction was illusory. (Doc. 46 at pp. 20–21.) In doing so, he states that there is no evidence that Gehl ever made a loan to Xtraction. (*Id.* at p. 21.) To the contrary, there is more than ample evidence that Gehl paid RIP $2,127,975 pursuant to his loan agreement with Xtraction. (Doc. 42 at ¶ 11; Doc 43 at ¶ 10.) The money was wired. (Doc 43 at ¶¶ 5–10.)

## VIII. Equitable Estoppel Does Not Apply.

Gleason further contends that the Personal Guaranty should not be enforced due to equitable estoppel. (Doc. 46 at p. 22.) However, as noted in Section V of this memorandum, Gleason expressly waived all defenses in the Personal Guaranty, including necessarily equitable defenses. Minnesota law is clear that a party can waive their equitable rights or future legal claims in a contract, and even more specifically, in a guaranty. *In re Est. of Murray*, No. A15-1061, 2016 WL 854724 at *5 (Minn. Ct. App. Mar. 7, 2016) ("We affirm the district court's decision that the waiver's plain language demonstrates Pint's intent to waive any present or future claims against Jonason arising from Pint's performance of the guaranty. The waiver is broad and clear.")

Moreover, Gleason has not submitted evidence establishing the prima facia elements of equitable estoppel. A party invoking equitable estoppel must establish: (1) conduct amounting to a representation or concealment of material facts that are (2) known to the party estopped and (3) unknown to the party claiming the benefit of the estoppel, and (4) the conduct is done with the intent or expectation that the party would act on it, and (5) the party does act on it (6) to his detriment. *SN4, LLC v. Anchor Bank, fsb*, 848 N.W.2d 559, 569 (Minn. Ct. App. 2014). Gleason summarily asserts equitable estoppel applies because "the Guaranty lacked consideration." (Doc. 46 at p. 22.) However, as discussed above, the Guaranty did not require additional consideration. Gleason does not allege any other specific information that would satisfy the prima facia elements of equitable estoppel, which is fatal to his defense.

Because Gleason has waived his equitable rights, and because Gleason has not established the prima facia elements of equitable estoppel, his equitable arguments should be rejected by this Court.

## IX. A Stay is Not Warranted.

Finally, Gleason argues that the Court should defer a ruling on this matter until the California action has been resolved. (Doc. 44 at p. 25.) However, this Court has already rejected that argument, finding that "Gleason has not provided a sufficient basis to support a stay." (*See* Doc. 31.) Further, Gleason's reference to the California action is curious given that in the Personal Guaranty, he waived "any claim whatsoever which the Guarantor may have against Borrower arising out of, or in any way connected with the Obligation until the Obligation is performed or satisfied."[3] (Doc. 44-1 at p. 78.)

Gleason has not provided any additional or compelling reasons why this Court should grant a stay and thus, his request for a stay should be rejected.

## **CONCLUSION**

Gleason has failed to provide any reason to excuse himself from his obligations under the Personal Guaranty. As a result, Gehl is entitled to judgment as a matter law.

---

[3] In addition to waiving his right to trial by jury. (Doc. 44-1 at p. 79.)

Dated:  November 5, 2024	**LATHROP GPM LLP**

By: <u>*/s/ Charles K. Maier*</u>
    Charles K. Maier (#230315)
    Kiralyn J. Locke (#403653)
    3100 IDS Center
    80 South 8th Street
    Minneapolis, MN 55402
    Charles.maier@lathropgpm.com
    Kiralyn.locke@lathropgpm.com

***Attorneys for Plaintiff***