UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Larry Gehl,                                                                  Civil No. 23-2244 (DWF/JFD)

          Plaintiff,

v.                                                                                        **MEMORANDUM
                                                                                           OPINION AND ORDER**

James P. Gleason,

          Defendant.

## INTRODUCTION

This matter is before the Court on Plaintiff Larry Gehl's motion for summary judgment. (Doc. No. 39.) Defendant James P. Gleason opposes the motion. (Doc. No. 46.) For the reasons set forth below, the Court grants the motion.

## BACKGROUND

Plaintiff Larry Gehl and Defendant James P. Gleason, along with Mike Gurnee and Gabriel Villalobos, were founders and owners of Xtraction, Inc. ("Xtraction"), a mattress recycling company. (Doc. No. 42 ("Gehl Decl.") ¶ 2.) Xtraction sought to purchase Rest In Peace Recycling, LLC ("RIP"), another mattress recycling company. (*Id.* ¶ 3.) In order to purchase RIP, Xtraction needed financing and Gehl agreed to loan $2,120,000 to Xtraction. (*Id.*)

In exchange for the loan, Xtraction executed a promissory note ("Note") to Gehl in the amount of $2,120,000. (*Id.* ¶ 4; Doc. No. 44-1, Ex. 3 ("Note") at 1.) The Note lists an interest rate of 8.0% per annum. (Note at 1.) The terms of repayment dictate that

monthly installments shall begin after the lender, Gehl, provides written notice to the borrower, Xtraction. (*Id.*) Xtraction would be in default upon failure to timely pay any amounts required under the Note after a notice from Gehl of such failure. (*Id.*) Upon default, Gehl could accelerate collection and the entire principal would become due. (*Id.* at 2.) Gurnee, as president of Xtraction, and Gehl signed the Note on December 1, 2020. (*Id.* at 3.) Xtraction's 2021 tax documents reflect increased liabilities consistent with this Note and increased assets consistent with the purchase of RIP. (*See* Doc. No. 47-17.)

The Note was secured by Gleason via two documents: a personal guaranty ("Guaranty") and a pledge agreement ("Pledge Agreement").[1] (Gehl Decl. ¶ 8.) The Note includes reference to these securities. (Note at 1.) Importantly for purposes of this motion, it is undisputed that Gehl and Gleason executed the Guaranty and Pledge Agreement. (*See* Doc. No. 44-1, Ex. 2 ("Gleason Dep.") at 80, 82, 96, 153.) Gleason was aware that these two documents were for the purpose of ensuring repayment of the Note. (*See id.* at 80, 85-86, 101.) However, Gleason asserts that he would not have signed these documents had he known he would be terminated from Xtraction. (Doc. No. 47 ("Gleason Decl.") ¶ 49.)

The Guaranty "unconditionally and irrevocably guarantees the punctual and complete payment and performance" of "all obligations" of Xtraction under the Note by the guarantor, Gleason. (Doc. No. 44-1, Ex. 4 ("Guaranty") ¶ 1.) Gleason's maximum

---

[1] A separate personal guaranty and a separate pledge agreement were executed by Robert Gurnee. Gurnee is not being sued for his securities and is not a party to this action. (*See* Gehl Dep. 139-40.)

liability under the Guaranty is 17.5% of the outstanding principal balance at the time Gehl seeks to enforce the Guaranty, plus interest and attorneys' fees. (*Id.* ¶ 2.) The Guaranty expressly waives "each and every defense" Gleason could bring. (*Id.* ¶ 4.) Gleason signed the Guaranty on January 11, 2021.[2] (*Id.* a 1, 3.)

Under the Pledge Agreement, Gleason granted a continuing security interest in his equity in Xtraction. (Doc. No. 44-1, Ex. 5 ("Pledge Agreement").) Gleason's equity was 17.5% ownership in Xtraction, consisting of 1,750 shares. (*Id.*) Gleason signed the Pledge Agreement on January 11, 2021. (*Id.* at 1, 6.)

Gehl paid RIP on behalf of Xtraction in three increments: a first payment of $536,587 on December 1, 2020, a second payment of $1,291,388 on the same day, December 1, 2020, and a third payment of $300,000 on April 28, 2021.[3] (Doc. No. 43 ("Dunlop Decl.") ¶ 5-8.)

Neither Xtraction nor Gleason has repaid Gehl for these payments. Xtraction did not repay Gehl under the Note. (Gehl Decl. ¶ 12.) Gehl sent a notice of payment

---

[2] While the Guaranty includes a clause indicating that it was signed "freely and voluntarily," Gleason claims that he signed under duress and without proper time to consult counsel. (*Compare* Guaranty at ¶ 11 ("This guaranty is freely and voluntarily given to [Gehl] by [Gleason], without duress or coercion, and after [Gleason] has either consulted with competent legal counsel or has been given an opportunity to do so, and [Gleason] has fully and carefully read and understands all of the terms and provisions of this Guaranty."), *with* Gleason Dep. At 87:10, 93 (asserting that he requested, but was not afforded, an opportunity to consult with an attorney and refusing to call his signature "voluntary").)

[3] These payments total $2,127,975, which is $7,975 more than the Note amount. However, the slight discrepancy does not change the calculation under the explicit terms of the Note.

demand, as required by the Note, on July 15, 2021. (Doc. No. 44-1, Ex. 8.) Two years later, on July 19, 2023, Gehl sent a notice of non-payment and impending default upon failure to pay the monthly payments up to that point by July 25, 2023. (Doc. No. 44-1, Ex. 9.) That second notice also informed Xtraction that default would allow Gehl to accelerate all payments.[4] (*Id.*) Subsequent to Xtraction's breach, Gleason has not paid any funds to Gehl pursuant to the Guaranty. (Gleason Dep. 90.)

Gehl brought the current action against Gleason on three counts. (Doc. No. 1 ("Compl.") ¶¶ 23-41.) Count I alleges that Gleason breached his obligations and is default under the Guaranty and requests repayment of the principal plus 8% interest. (*Id.* ¶¶ 23-27.) Alternatively, Count II alleges that Gleason intended to induce Gehl's loan to Xtraction and Gehl reasonably relied upon that and requests enforcement of the Note via promissory estoppel. (*Id.* ¶¶ 28-33.) Count III alleges that Gehl is entitled to collateral pursuant to the Pledge Agreement and requests such an order to that effect. (*Id.* ¶¶ 34-41.)

Gehl moves for summary judgment on Count I to find Gleason liable for breach of the Guaranty. (Doc. No. 39.) Gehl stipulates that he will voluntarily dismiss Counts II and III upon the granting of summary judgment on Count I. (Doc. No. 41 at 2 n.1.)

---

[4] Gleason did not receive these notices. (Gleason Decl. ¶ 47.) However, Gleason was not a contractually required party to receive the notices. (Note at 1.) Further, the notices were sent after he was terminated from his employment with Xtraction on July 7, 2021. (Gleason Dep. 120.)

4

Gleason opposes the motion. (Doc. No. 46.) Gleason also requests that the Court defer ruling on the motion. (*Id.* at 25.)

## DISCUSSION

**I.      Request for Stay**

Before turning to the breach of contract discussion, the Court will address Gleason's request to defer. Gleason requested that the Court defer its ruling on the motion for summary judgment until after the resolution of the California action, or, if the Court grants the motion for summary judgment, that the Court stay enforcement of the award pending that resolution. (Doc. No. 46 at 25.) Gleason argues that, given the overlap between the present action and the California action, the interests of justice require the stay. (*Id.*) Gleason had previously requested a stay in the proceedings (Doc. No. 18), which the Court denied (Doc. No. 31). This second request fails to identify any reason for a stay not already addressed by the Court. Further, the Guaranty explicitly states that liability is not impacted by any offsetting claims. (Guaranty ¶ 8(c).) Regardless of whether Gleason is awarded monetary damages in the California action, his liability under the Guaranty is the same. Gleason's request for a stay is denied.

**II.     Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated,

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

### III. Breach of Contract Claim

The parties do not dispute that this contract dispute is governed by Minnesota law, per the choice of law clause in the Guaranty. (*See* Guaranty ¶ 10.) Under Minnesota law, "[t]he elements of a breach of contract claim are '(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.'" *Lyon Fin.*

6

*Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (citing *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)).

### A.   Formation of the Guaranty

Gleason admits that he entered into the Guaranty but disputes the validity of that contract formation.

First, Gleason questions the Note itself, debating the authentication of and consideration associated with the Note. (Doc. No. 46 at 14-15.) He also asserts that the entire loan transaction is illusory, making the Note invalid and unenforceable. (Doc. No. 46 at 20-21.) These issues are irrelevant to the dispute at hand. This dispute concerns the Guaranty, not the Note itself.

Second, Gleason contends that the Guaranty is unenforceable because there was no consideration. (Doc. No. 46 at 18-19.) Gleason points to the six-week gap between the signing of the Note and the signing of the Guaranty. Consideration is a fundamental requirement of a contract. "When there is a lack of consideration, no valid contract is ever formed." *Franklin v. Carpenter*, 244 N.W.2d 492, 495 (Minn. 1976). The Court finds sufficient consideration. Gleason admits he would not have entered the contract if he had known "that he would not enjoy the benefits associated with [the Guaranty]." (Doc. No. 46 at 19.) By his own admission, there was a benefit to securing the Note.

Gleason entered into a valid contract with Gehl to secure the Note. Gleason is bound by the terms of the Guaranty.

7

### B. Performance by Gehl

Gehl paid funds directly to RIP to purchase Xtraction, fulfilling his obligations under the Guaranty. Gleason does dispute whether the loan was made, stating that Gehl's motion "is devoid of evidence to indisputably establish that Gehl ever made a loan to Xtraction." (Doc. No. 46 at 15.) This argument is disingenuous. Gehl produced bank records showing the transfers of funds, which were authenticated by Gehl's financial advisor, Scott Dunlop. (Doc. No. 43.) Further, while Gleason testified that he never saw financial records of the purchase, he does not dispute that the purchase of RIP occurred. (Gleason Dep. 61-62.) Further yet, the Guaranty and Pledge Agreement that Gleason signed stipulate to the existence of a loan under the Note. There is sufficient proof that Gehl made the loan of $2.12 million. No reasonable jury would find that Gehl failed to perform.

### C. Breach by Gleason

There is no genuine dispute as to whether Gleason's obligations under the contracts were executed. Gleason himself admits to non-performance of the Guaranty.

Gleason attempts to circumvent the issue of non-performance by asserting various defenses to avoid liability under the Guaranty. He argues that there was no proof of a breach by Xtraction, precluding his liability under the Guaranty. (Doc. No. 46 at 16.) He also argues that Gehl acted improperly to induce Gleason into signing and that Gehl should therefore be estopped from enforcing the Guaranty. (Doc. No. 46 at 22.) But the assertion of these defenses does not change the outcome. Gleason waived all defenses explicitly by signing the Guaranty, including issues of notice and estoppel. (Guaranty

8

¶ 4.) Further, Gleason's assertions related to Gehl's fiduciary obligation and allegedly improper conduct are issues to be resolved in the California action. Gleason's non-performance under the Guaranty is not changed by any of these factors.

### D.     Damages

Based on the explicit agreement, a finding of breach of contract by Gleason entitles Gehl to 17.5% of the outstanding balance of the principal, all accrued interest under the Note, and any costs of collection. (Guaranty ¶ 2.) The Court will not determine today the costs of collection, including attorneys' fees.[5]

## CONCLUSION

The Court finds that Plaintiff Larry Gehl is entitled to judgment as a matter of law as to Count I of his complaint. Summary judgment is granted in favor of Plaintiff. Gleason breached the Personal Guaranty and is ordered to pay Gehl in accordance with the agreed upon contractual terms.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1.     Plaintiff Larry Gehl's motion for summary judgment finding Defendant James P. Gleason liable for breach of contract (Doc. No. [39]) is **GRANTED**.

---

[5]     The parties are invited to submit documents to the Court to facilitate calculation of reasonable attorneys' fees. However, the Court encourages the parties to save money on further attorneys' fees by settling the amount on their own.

    2.    Plaintiff Larry Gehl's promissory estoppel and replevin claims (Counts II and III) are **DISMISSED WITH PREJUDICE**.

    3.    Defendant James P. Gleason's request to defer judgment or to stay enforcement is respectfully **DENIED**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 7, 2025                        s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge