UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Larry Gehl,                                                                      Civil No. 23-2244 (DWF/JFD)

          Plaintiff,
                                                                    MEMORANDUM
v.                                                                                       OPINION AND ORDER

James P. Gleason,

          Defendant.

## INTRODUCTION

This matter is before the Court on Plaintiff Larry Gehl's motion for entry of judgment on attorneys' fees and costs pursuant to Rule 54 of the Federal Rules of Civil Procedure. (Doc. No. 59.) Defendant James P. Gleason opposes the motion. (Doc. No. 64.) For the reasons set forth below, the Court grants the motion but adjusts the amount awarded.

## BACKGROUND

A comprehensive factual background was set forth in the Court's January 7, 2025 Order. (*See* Doc. No. 52.) For purposes of this motion, the Court merely summarizes the factual background.

Plaintiff Larry Gehl loaned money to Xtraction, Inc. ("Xtraction"), a company that he, Defendant James P. Gleason, and two others co-founded and co-owned. (Doc. No. 42 ("Gehl Decl.") ¶¶ 2-3.) In exchange for the loan, Xtraction executed a promissory note (the "Note") to Gehl in the amount of $2,120,000. (Doc. No. 44 ("First Maier Decl.")

¶ 5, Ex. 3 at 74.)  That Note was secured by Gleason via two documents:  a personal guaranty (the "Guaranty") and a pledge agreement.  (Gehl Decl. ¶ 8.)  Gleason's maximum liability under the Guaranty is 17.5% of the outstanding principal balance at the time Gehl seeks to enforce the Guaranty, plus interest and attorneys' fees.  (First Maier Decl. ¶ 6, Ex. 4 ("Guaranty") ¶ 2.)  Xtraction defaulted under the loan and Gleason failed to pay Gehl pursuant to the Guaranty.  (Gehl Decl. ¶ 12; First Maier Decl. ¶ 4, Ex. 2 at 27.)  Gehl therefore brought a breach of contract action against Gleason under the Guaranty.  (Doc. No. 1.)

The Court found that Gehl was entitled to judgment as a matter of law on his breach of contract claim against Gleason.  (Doc. No. 52 at 9.)  The Court explained that "[b]ased on the explicit agreement, a finding of breach of contract by Gleason entitles Gehl to 17.5% of the outstanding balance of the principal, all accrued interest under the Note, and any costs of collection." (*Id.* (citing Guaranty ¶ 2).)  The Court ordered Gleason to pay Gehl "in accordance with the agreed upon contractual terms."  (*Id.*)

Gehl now requests that judgment be entered against Gleason in the amount of $640,149.04, which is comprised of:  (1) $371,000.00 in loan principal; (2) $121,809.97 in loan interest; (3) $144,085.00 in attorneys' fees; and (4) $3,254.07 in costs.  (Doc. No. 60 at 1, 6.)  Gehl submitted a declaration by his counsel in support of his motion detailing these amounts, including redacted[1] invoices.  (Doc. No. 61 ("Second Maier

---

[1]  The Court ordered the submission of unredacted invoices for in camera review (Doc. No. 68), which were provided (Doc. No. 69 ("Unredacted Invoices")).  The Court has reviewed the unredacted invoices in detail and uses them as the basis for its Opinion.

Decl.").) The $144,085.00 in attorneys' fees is comprised of the following work by Lathrop GPM[2]:

| Timekeeper | Title | Hours Billed | Hourly Rate | Fees Billed |
|---|---|---|---|---|
| Charles K. Maier | Partner | 81.4 | $670 | $54,538.00 |
| Robert J. Haupt | Partner | 13.7 | $550 | $7,535.00 |
|  |  | 36.6 | $595 | $21,777.00 |
| Shlomo A. Hahn | Associate | 37.2 | $315 | $11,718.00 |
|  |  | 68.6 | $370 | $25,382.00 |
| Kiralyn J. Locke | Associate | 40.3 | $405 | $16,321.50 |
| Rhett M. Buchmiller | Associate | 0.3 | $330 | $99.00 |
| Benjamin M. Podobinski | Associate | 0.5 | $340 | $170.00 |
|  |  | 9.7 | $365 | $3,540.50 |
| Hashini B. Rathnayaka | Litigation Paralegal | 4.9 | $280 | $1,372.00 |
| Jennifer L. Pulkrabek | Litigation Support Project Manager, CEDS | 4.8 | $340 | $1,632.00 |
| Total |  | 298.0 |  | $144,085.00 |

(Id. ¶ 7.) Mr. Maier declares that the hourly rates for each Lathrop GPM employee is a reasonable rate in view of the nature of the work and the hourly rates charged by similarly experienced professionals in the area. (Id. ¶¶ 8, 12-20.)

Gleason opposes the motion. (Doc. No. 64.) First, Gleason argues that any judgment should be offset by the collateral Gehl collected from him. Second, Gleason

---

[2]  The numbers in the table were pulled from the Second Maier Declaration and then checked by the Court. The Court found one error in the declaration's table, which has been corrected here. The table in the declaration lists 41.9 hours billed by Kiralyn J. Locke, corresponding to fees of $16,969.50. (Second Maier Decl. ¶ 7.) The correct amounts are 40.3 hours billed for a fee of $16,321.50. (See id. ¶ 4, Ex. 3 ("Redacted Invoices").) While the numbers within the table are slightly off in this regard, the total hours (298) and fees billed ($144,085.00) are correct, by the Court's calculation.

argues that Gehl was already made whole by Gleason's Xtraction shares. Third, Gleason argues that the requested fees and costs are excessive, unreasonable, and not supported by admissible evidence.

## DISCUSSION

### I.     Loan Principal and Interest

Gehl is entitled to 17.5% of the outstanding balance of the loan principal, plus interest of 8% per annum. The outstanding balance is $2,120,000, of which 17.5% is $371,000. Gehl calculates the interest as of January 7, 2025, to be $121,809.97. (Second Maier Decl. ¶ 23.) Gleason does not dispute this amount. (*See generally* Doc. No. 64.) Gleason asks the Court to offset the award by the value of Gleason's shares in Xtraction, which were forfeited upon his termination from the company, or deny the award entirely because Gehl was already made whole by the shares. (*Id.* at 6-7.) The Court rejects these arguments. The shares were pledged as collateral separate from the Guaranty, which is at issue here. Further, as the Court explained in its January 7, 2025 Order, the plain language of the Guaranty prohibits offsetting claims against the liability. The Court therefore awards $492,809.97 for the loan principal and interest.

### II.    Calculation of Fees and Costs

#### A.     Legal Standard

The lodestar, calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate, is the starting point in determining attorneys' fees. *See, e.g.*, *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005); *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 535 (Minn. 2013). "A reasonable hourly rate is usually the ordinary

4

rate for similar work in the community where the case has been litigated." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). A district court has the role of determining what is reasonable and "may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The burden is on the fee applicant to document the appropriate hours expended and hourly rates. *Hensley*, 461 U.S. at 433. With respect to hourly rates, a fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

The Court may adjust the lodestar based upon the time and labor required, the difficulty and nature of the case, the results, customary fees, and the ability of counsel, among other relevant factors. *In re RFC and ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 827, 842 (D. Minn. 2019). The most important factor in reasonableness is the magnitude of success achieved. *See Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000). Further, courts should exclude hours that were not reasonably expended—for example, hours that were excessive, redundant, or otherwise unnecessary to a degree that a lawyer in private practice would be ethically obligated to exclude them from a fee submission to a client. *Hensley*, 461 U.S. at 434.

**B.     Fees**

As detailed in the table above, Gehl requests $144,085.00 in attorneys' fees. Upon careful review of the unredacted invoices, the Court finds no excessive, redundant, or otherwise unnecessary work. Additionally, the Court recognizes that Gehl's attorneys were successful in defending the motion to dismiss and arguing the motion for summary judgment. However, the Court reduces the hourly billing rates requested by 10% because the billed rates are outside of the reasonable range for similar work in the locality. Recent fee awards in the Twin Cities area have identified $650 per hour as the highest end of reasonable rates. *See In re RFC*, 399 F. Supp. 3d at 847 (collecting cases). Indeed, awards have been capped at $650 per hour even for litigation that is more complex than the straightforward contract dispute here. *See, e.g.*, *Bollom v. Brunswick Corp.*, No. 18-cv-3105, 2021 WL 1195739, at *5 (D. Minn. March 30, 2021). The Court sees no reason to award fees as high as $670 per hour and Gehl provided no evidence outside of his attorney's declaration that the fees were reasonable to persuade the Court otherwise. The Court awards $129,676.50 in attorneys' fees.

Gleason argues that fees should not be awarded because Xtraction was billed for these fees, not Gehl. Gleason lists, and the Court finds, no support for this contention. In cases in which a third party pays fees, courts have still awarded the prevailing party fees and costs. *E.g.*, *Gillespie v. Dring*, No. 15-cv-950, 2019 WL 5260381, at *16-17 (M.D. Pa. Oct. 17, 2019). Gehl's entitlement to fees and costs is not impacted by the entity which ultimately pays.

6

### C. Costs

Gehl requests $3,254.07 in costs. (Doc. No. 60 at 1.) The Court finds no issue with the types of costs billed. However, the Court reduces this amount because Gehl's calculation of costs is inconsistent with the invoices provided to the Court. The invoices provided total $3,174.28 in costs—$79.79 less than the requested costs of $3,254.07. (*See* Redacted Invoices; Unredacted Invoices.) Specifically, Gehl's calculations list $1,637.44 as the costs billed in the October[3] 2024 invoice. (Second Maier Decl. ¶ 4, Ex. 2 ("Invoices Table").) However, the October 2024 invoice billed for $1,557.65 in costs. (Redacted Invoices at 62, 64-65.) This discrepancy accounts for the discrepancy in the total costs requested. The Court awards $3,174.28 in costs.

### CONCLUSION

The Court awards Gehl $625,660.75, which is comprised of: (1) $371,000.00 in loan principal; (2) $121,809.97 in loan interest; (3) $129,676.50 in attorneys' fees; and (4) $3,174.28 in costs.

### ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

---

[3] The Second Maier Declaration is further inaccurate in that it lists all costs one month earlier than when they were billed. (*Compare* Invoices Table, *with* Redacted Invoices.) Relevant here, $1,637.44 is listed as part of invoice number 2301957 dated October 9, 2024. (Invoices Table at 2.) However, those costs, once corrected numerically, were billed as part of invoice number 2307958 dated November 7, 2024. (Redacted Invoices at 62, 64-65.)

1. Plaintiff Larry Gehl's motion for entry of judgment on attorneys' fees and costs (Doc. No. [59]) is **GRANTED**. The Court awards $129,676.50 in attorneys' fees and $3,174.28 in costs.

2. The Court adopts Plaintiff Larry Gehl's uncontested finding that $492,809.97 is owed for loan principal and interest and awards Plaintiff that amount.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 6, 2025                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge